Camil **IBRAHIM** a/k/a Camil Kreit and Dr. Camil Kreit, M.D., P.A., Appellants,

v.

Linda **YOUNG**, Appellee.

No. 11–06–00149–CV.

Court of Appeals of Texas, Eastland.

Feb. 22, 2008.

Rehearing Overruled April 10, 2008.

---

Cynthia Perlman, Maurice Bresenhan, Jr., Janna I. Lindig, Pascal Paul Piazza, Zukowski, Bresenhan & Sinex, Houston, for Appellants.

Vincent L. Marable III, Paul Webb, P.C., Wharton, Lindsey B. Whisenhant, Woodville, for Appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is a personal injury suit. Linda Young sued her employer and a furniture manufacturer for injuries she sustained when her office chair broke and she fell. She later filed an amended pleading naming Dr. Camil Kreit, M.D., P.A. a/k/a Camil Ibrahim as a defendant. When this defendant did not respond to requests for admission, Young filed a motion for partial summary judgment. The trial court granted the motion and, after an evidentiary hearing, rendered final judgment in favor of Young and against Dr. Camil Kreit, M.D., P.A. a/k/a Camil Ibrahim. Camil

Ibrahim a/k/a Camil Kreit and Dr. Camil Kreit, M.D., P.A. have separately appealed from this judgment.

### I. *Background Facts*

Unless clarity requires that we identify the names utilized by the parties in a specific document, we will refer to the individual as Dr. Kreit and the professional association as Kreit PA. Young initially filed suit against Pierre Semrani, M.D., P.A. d/b/a Family Health Clinic; Dr. Elias Kanaan, Individually; and FDL, Inc. Young alleged that Dr. Kanaan was her employer and that she was injured when an office chair manufactured by FDL broke causing her to fall. One week later, Young filed an amended petition and added Dr. Camil Kreit, M.D., P.A. as a defendant. Young alleged in this petition that Kreit PA was her employer, and she requested service on "Dr. Camil Kreit, M.D., P.A." at a post office box. Citation was issued and sent by certified mail to "KREIT, CAMIL, DR. M.D."[1] Approximately five weeks later, a second citation was issued for service on "KREIT, CAMIL, DR., M.D." The officer's return reflects that this was personally delivered to "Kreit, Camil Dr." on March 1, 2004.

On March 3, the district clerk received a letter dated March 2, 2004, and signed by Camil Ibrahim over a fingerprint or thumbprint. The letter stated: "Please file copy of citation cause # CI21156[2] refused for cause and counterclaims of United States District court for the southern district of Texas # H 04–439[.] In addition to copy of the 13th amendment[3] in

---

**1.** Someone other than Dr. Kreit signed the green card.

**2.** This was the trial court's cause number.

**3.** The Thirteenth Amendment provides:
Section 1. Neither slavery nor involuntary servitude, except as punishment for

crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
Section 2. Congress shall have power to enforce this article by appropriate legislation.

jacket file CI21156. Further affiant saith naught Camil Ibrahim." Attached to the letter was a copy of the second citation and Young's amended petition. The notation "refused for cause" was written on every page. The letter also included a copy of a federal pleading styled a counterclaim in admiralty filed by Camil Ibrahim against Young's trial counsel.

On March 15, Camil Ibrahim mailed a second letter to the district clerk. This letter stated: "Please find a copy of Default Judgment and [an] affidavit Dated 3/12/2004, to be filed in under NO. CIV21156." The affidavit authenticates a default judgment he alleged was taken against Young's trial counsel.[4] The default judgment has a federal style and cause number but was signed by Camil Ibrahim. On March 30, Camil Ibrahim sent a copy to the district clerk of a letter he sent to the federal district clerk. This letter stated: "Please find an original of Default Judgment received from the County record office, affidavit Dated 3/12/2004, and Certified copy of thirteen amendment to the Constitutions, to be filed in the civil action file # HO4–439."

Young filed a second amended petition on April 7. This petition named "Dr. Camil Kreit, MD, PA a/k/a Camil Ibrahim" as a defendant and added a fraud allegation, contending that the defendant withheld money from her paycheck for health insurance premiums but did not maintain any health insurance for her. On May 7, Young mailed a request for production of documents and a request for admissions to "Dr. Camil Kreit, M.D. a/k/a Camil Ibrahim." The requests were not answered, and on September 24, Young filed a motion for partial summary judgment. That same day, Camil Ibrahim sent a copy to the district clerk of his letter to the federal district clerk.[5] Attached to this letter was a copy of Young's motion for partial summary judgment. The notation "refused for cause" had been written on each page.

On October 1, Camil Ibrahim filed a "NOTICE OF FACTS AND LAW, AND DEMAND." In this document, he indicated that his pleading was a special appearance under Rule 8 of the supplemental admiralty rules and that he was from the

---

4. The default judgment reads:
 Lindsey B. Whisenhant has failed to assert any claim to Camil Ibrahim by proving the certificate of search in the district court to be faulty or fraudulent within the twenty days stipulated. As stipulated on the summons properly formed and served[:]
 You are hereby summoned and required to serve upon plaintiff, whose address is: Camil Ibrahim; 203 North College; Cleveland, Texas. [77327] AND FILE WITH THE CLERK OF THE COURT an answer to the complaint which is herewith served upon you, within twenty 20 days of service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.
 [D]efault judgment is hereby entered and the injunctive relief sought in the counterclaim is awarded to Camil Ibrahim. Lindsey B. Whisenhant is by law to forfeit seizure upon Camil Ibrahim's property and

person. If Lindsey B. Whisenhant fails to do so, a certificate of exigent circumstances will issue calling for Lindsey B. Whisenhant's arrest in the cognizance of the State Department and Speaker of the House.
 Camil Ibrahim
 Date: 03/12/2004

5. Between June 18 and September 14, the district clerk received four letters from Camil Ibrahim. Each letter forwarded discovery pleadings and correspondence he had received in connection with this case. The notation "refused for cause" was written on each page of the attachments. Dr. Kreit also filed federal lawsuits against Young and her trial counsel, a state court suit against Young in Polk County, a grievance against Young's trial counsel, and a complaint against them with the United States Department of Health and Human Services.

"kreits Family." He included an affidavit that stated:

We, Men called Camil Ibrahim D*B*A Camil kreit MD, Affiants herein, state under penalties of perjury under the Laws of the United States of America and of Texas that we are competent to be witnesses and that the facts contained herein are true, correct, complete, and not misleading to the best of our personal knowledge and belief so help us God

### Statement of Facts

There is no documentation to evidence that we, Camil Ibrahim are not living souls and demand strict proof thereof

There is no documentation to evidence that we, Camil Ibrahim are the defendants CAMIL KREIT or any derivative name forms thereof listed above and demand strict proof thereof

I, Camil Ibrahim deny being the fictitious entities CAMIL KREIT or any derivative name forms thereof listed as defendants above and demand strict proof thereof

There is no documentation to evidence that I, Camil Ibrahim voluntarily use Federal Reserve Notes to discharge debts in equity with limited liability, nor that such use is not compelled by necessity as a matter of survival only and demand strict proof thereof

There is no documentation to evidence that we, Camil Ibrahim are persons, residents, individuals, or citizens of the United States/District of Columbia and its instrumentalities under the purview of the 14th Amendment to the constitution of the United States and demand strict proof thereof

There is no documentation to evidence that Camil Ibrahim have not reserved their Right under the Uniform commercial Code at Article I, § 207, whereby Camil Ibrahim may reserve their common law Right not to be compelled to perform under any contract, commercial agreement, or bankruptcy and by such reservation of Right, Camil Ibrahim have not informed all administrative agencies of federal, state, and local government that Camil Ibrahim do not and will not accept the liability associated with the compelled benefit of any such unrevealed contract, commercial agreement, or bankruptcy and demand strict proof thereof

There is no evidence or documentation to show that Camil Ibrahim have been incorporated or that CAMIL KREIT are corporations and demand strict proof thereof

There is no evidence or documentation to show that CAMIL KREIT have been incorporated or that Camil Kreit are corporations

There is no evidence or documentation to show that we have been incorporated or that we are corporations

There is no evidence or documentation to show that an unincorporated living man or woman has standing to sue or be sued in a statutory Court

There is no evidence or documentation to show that an unincorporated artificial entity, living man or woman, Camil Ibrahim, or CAMIL KREIT have standing to sue or be sued in a statutory Court pursuant to Black's Law Dictionary— Sixth Edition Definition—Legal Entity, 59 Am Jur 2d § 20, 1 TAC SUBCHAPTER C ENTITY NAMES § 79 31, TRCP Rule 52, and FRCP 9(a)

We deny the existence of corporations

Further Affiant saith naught

/s/

Camil Ibrahim

D*b*a Camil Kreit MD

On October 4, Camil Ibrahim d/b/a Camil Kreit, M.D. filed a "RESPONSE to case No CIV 21156." In this pleading, he denied all allegations against him and asked the trial court to dismiss them. On October 12, "Camil Ibrahim d/b/a Camil Kreit MD" filed a motion to dismiss for failure to state a claim upon which relief can be granted.

The trial court conducted a hearing on October 27. No one appeared on behalf of Dr. Kreit or Kreit PA. The trial court entered a partial summary judgment against "Dr. Camil Kreit, M.D., P.A. a/k/a Camil Kreit." Dr. Kreit subsequently filed an objection to the summary judgment order. In this objection, he contended that insufficient facts had been shown to support a partial summary judgment and that Young's counsel had falsely represented to the trial court that Dr. Camil Kreit was a party to the lawsuit. He asked the court to dismiss all claims against Dr. Camil Kreit/Camil Kreit M.D. and to sanction Young's counsel.

The trial court set a final hearing for February 3, 2006. Dr. Kreit appeared at the hearing and advised the court that he was there by special appearance. He objected to the court's jurisdiction and indicated that federal courts had jurisdiction of the dispute and that venue had been changed to the Department of Health Service. The trial court overruled his objection. Young testified and was cross-examined by Dr. Kreit. Young then called her treating physician by deposition. After Young read that portion of the deposition establishing the physician's qualifications and personal knowledge, Dr. Kreit objected, contending that this testimony was irrelevant because Young's symptoms were

cardiac and the physician's testimony had nothing to do with them. Dr. Kreit's objection was overruled. After Young read additional testimony, Dr. Kreit objected to the lack of a jury. The trial court verified that Dr. Kreit had not paid a jury fee and overruled his objection. Young read the remainder of the deposition and rested. Dr. Kreit then testified. He reiterated his objections to the trial court's assumption of jurisdiction, and he testified that Young's health problems were due to other preexisting conditions. On cross-examination, he testified that his name is Camil Ibrahim and that he is doing business as Camil Kreit, M.D.

The trial court rendered judgment for Young against "Dr. Camil Kreit, M.D., P.A. a/k/a Camil Ibrahim." The trial court awarded Young past and future medical expenses of $104,527.80, past and future lost wages of $138,112, fraud damages of $1,600, and past and future mental anguish and pain and suffering damages of $150,000. Kreit PA filed a motion to quash, to withdraw void admissions, and for new trial. Dr. Kreit filed a similar motion. The trial court overruled both motions.

## II. *Issues* [6]

Kreit PA and Dr. Kreit attack the partial summary judgment and final judgment with several issues. Collectively, they argue that:

1. the trial court did not have jurisdiction over either of them;

2. the trial court did not give sufficient notice of the trial setting;

3. the trial court improperly denied them a jury;

**6.** Following oral argument, the parties filed post-submission briefs. We have considered the additional legal authority provided in those briefs. The briefs also contain matters not previously briefed. We have not considered any new issues raised in the post-submission briefs.

4. the evidence was legally or factually insufficient to support the trial court's damage awards; and

5. the trial court erred by denying their postjudgment motions.

### III. *Discussion*

#### A. *Did the Trial Court Acquire Jurisdiction over Dr. Kreit or Kreit PA?*

Young argues that she sued Dr. Kreit not Kreit PA and that the references to Kreit PA in her pleadings and in the trial court's orders and judgment simply refer to a "d/b/a" rather than a separate entity. Dr. Kreit and Kreit PA both argue that the trial court did not acquire jurisdiction over them and, therefore, that the judgment is void as to them. In an effort to resolve this threshold question, we will first determine who Young sued and then who appeared.

#### 1. *Young's Pleadings.*

■ Young's amended petition added "Dr. Camil Kreit, MD, PA" as a defendant. Subsequent pleadings referred to this defendant as "Dr. Camil Kreit, M.D., P.A. a/k/a Camil Ibrahim." Dr. Kreit and Kreit PA both contend that Kreit PA is a duly formed Texas professional association. Young's amended petition appears to assert a claim against that professional association. However, she contends that the references to the professional association were merely included to assert a claim against Dr Kreit's assumed name pursuant to Tex.R. Civ. P. 28.[7]

In *Chilkewitz v. Hyson*, 22 S.W.3d 825 (Tex.1999), the court held that a petition naming a doctor as a defendant in a malpractice action was sufficient to toll limitations against a professional association with the same name. The plaintiff sued "Morton Hyson, M.D." and identified him as an individual who practiced medicine. 22 S.W.3d at 827. Dr. Hyson filed an answer. After limitations had run, Dr. Hyson filed a motion for summary judgment contending that he, individually, did not perform or attend the plaintiff's surgery; that none of his employees did so either; and that he did not own any of the equipment used during the surgery. The plaintiff filed an amended petition and changed the defendant's name from "Morton Hyson, M.D." to "Morton Hyson, M.D., P.A." *Id.* The professional association appeared and argued that any claim against it was barred by limitations. The trial court overruled the professional association's limitations argument and entered judgment for the plaintiff. *Id.*

■ The supreme court applied Rule 28 and agreed with the trial court because there was some evidence that the professional association conducted business as Morton Hyson, M.D. *Id.* at 828. The court noted that Rule 28 allows a plaintiff to file suit against an individual doing business under the name of an association, partnership, or corporation even if the association, partnership, or corporation does not exist. For example, if an individual was doing business under the name Widgets International, Inc. but the plaintiff thought that this was an actual entity, a suit against Widgets International, Inc. would be considered a suit against the individual. *Id.* at 829. The court further noted that if an association, partnership, or corporation does business in the name of an individual, a suit may be filed against the entity by

---

**7.** This rule provides:

Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted.

using the individual's name, so long as the plaintiff amends his petition to add the defendant's correct legal name.[8] *Id.*

■ Dr. Kreit and Kreit PA argue that *Chilkewitz* is not controlling because in that case the original defendant was properly served, the pleadings were eventually amended to correctly name the professional association as a party, and the case involved the application of a limitations defense. They contend that in this case Kreit PA was never served and that Young's pleadings were never corrected to name the proper party and note that they are not asserting limitations. We agree that Young's citations were defective, but because this is not an appeal of a default judgment and because a defective citation can be waived with an appearance,[9] this fact does not end our analysis.

The question is, who did Young sue? Even though her amended petition appears to refer to a professional association, Young did not request service on a registered agent.[10] Conversely, when she sued Pierre Semrani, M.D., P.A. d/b/a Family Health Clinic and FDL, Young requested service on their registered agents. Furthermore, beginning with the second amended petition, Young's pleadings referred to the defendant as "Dr. Camil Kreit, MD, PA a/k/a Camil Ibrahim." The significance of this is that it followed and responded to a series of letters from Dr. Kreit to the district clerk.

This correspondence establishes at least some of the reason for the confusion. The letters were always signed by Camil Ibrahim but at times referred to the name Kreit[11] and in one shows that he did business as Camil Kreit M.D., P.A.[12] We agree with Young that Rule 28 applies. Because Dr. Kreit does business as Camil Kreit M.D., P.A. and because Young amended her petition in response to Dr. Kreit's correspondence, Young's amended petition added Dr. Kreit as a defendant. Young did not sue Kreit PA. Therefore, it was not a party before the trial court, and we have no jurisdiction over it now. Kreit PA is dismissed from this appeal.

*2. Dr. Kreit's Pleadings.*

■ Dr. Kreit complains that Young's citations and the officer's returns were defective for several reasons. We agree. The question becomes did Dr. Kreit waive this by filing an answer? And if so, when? The supreme court has eschewed a techni-

---

**8.** The court also referred to two common-law defenses to limitations: misidentification and misnomer. Misidentification arises when two separate legal entities exist and a plaintiff mistakenly sues the entity with a name similar to that of the correct entity. Misnomer arises when a plaintiff sues the correct entity but misnames it. *Chilkewitz,* 22 S.W.3d at 828. The court did not consider either defense because it found Rule 28 controlling. Because Young does not rely upon either defense, we need not consider them as well.

**9.** *See Baker v. Monsanto Co.,* 111 S.W.3d 158, 161 (Tex.2003) (general appearance waives any defect in the manner of service).

**10.** When she filed her amended petition, she merely asked that service be sent to a "P O Box."

**11.** For example, the counterclaim attached to Dr. Kreit's March 2, 2004 letter to the district clerk states, "**Comes now** Camil Ibrahim of the Kreit[1] family." The footnote attached to this statement states, "Camil's native cultural custom is forfeited to the Western custom of 'first' and 'middle' names composing the full true name. 'Ibrahim' is actually the name of Camil's father."

**12.** In his motion to dismiss for failure to state a claim upon which relief can be granted, Dr. Kreit argued that the fraud allegation against him for failing to acquire insurance was false because he had acquired insurance from AFLAC. Dr. Kreit attached a cancelled check to AFLAC from Camil Kreit M.D. P.A. in support of this contention.

cal definition or test for what constitutes an answer. In *Smith v. Lippmann*, 826 S.W.2d 137, 138 (Tex.1992), the court held that a letter filed by the defendant was an answer—even though it was not in the standard form of an answer—because it identified the parties, the case, and the defendant's current address.[13]

Dr. Kreit argues that an answer must also contain some response to the plaintiff's petition, citing *Narvaez v. Maldonado*, 127 S.W.3d 313, 318 (Tex.App.-Austin 2004, no pet.). This was a divorce case. Maldonado alleged that she and the respondent were common-law married. He signed the citation, had his signature notarized, and returned it to the district clerk's office. The Austin court held that this was not an answer because "it included no statement that could be construed as any type of response to the pleadings." 127 S.W.3d at 318. We agree with the Austin court that Narvaez did not enter a general appearance but respectfully disagree that an answer must necessarily be responsive to the plaintiff's petition. The letter that the supreme court considered an answer in *Lippmann* acknowledged receipt of the plaintiff's petition, but it did not respond to any of the plaintiff's allegations. *See Lippmann*, 826 S.W.2d at 137.

Dr. Kreit also argues that the *Lippmann* test only applies to default judgments and that a document must meet a higher standard before it can be considered an answer in a summary judgment case, citing *Hock v. Salaices*, 982 S.W.2d 591 (Tex.App.-San Antonio 1998, no pet.). We agree with the San Antonio court's holding that the trial court improperly granted a summary judgment after first finding that the defendant had not filed an answer, but we respectfully disagree with part of its analysis and, instead, agree with the concurring opinion in that case. 982 S.W.2d at 595. The court relied upon the procedural requirements for obtaining a summary judgment and a public policy that abhors defaults to conclude that a document could be considered an answer if the plaintiff were attempting to obtain a default judgment but not an answer if the plaintiff filed a motion for summary judgment. We note that the court provided no definition for what constitutes an answer sufficient to allow a plaintiff to move for summary judgment but, instead, concluded that it was a factually specific determination subject to an abuse of discretion review. *Id.* at 594. The court cited no provision of the Rules of Civil Procedure supporting a conclusion that a document is or is not an answer depending upon the plaintiff's subsequent actions and cited no supreme court case applying different tests for determining what constitutes an answer in different situations.[14] *Id.*

---

13. The letter stated:

> This correspondence certifies that I (Gilbert Smith) have received and signed for the citation for case number 43,846, *Rae Lippmann v. Gilbert Smith*, issued by the Honorable District Court 75th Judicial District of Libert (sic) County, Texas at the Court House of said County in Liberty, Texas on the 31st day of March of 1989.

*Lippmann*, 826 S.W.2d at 137. The defendant signed the letter and provided his current mailing address immediately below his signature.

14. Dr. Kreit also suggests that the supreme court utilizes a different test for an answer in non-default judgment situations, citing *Exito Electronics Co., Ltd. v. Trejo*, 142 S.W.3d 302 (Tex.2004). In this case the court held that a Rule 11 agreement filed with the trial court that extended the time to file an answer did not waive a special appearance. *Id.* at 306. The decision was governed by Texas's "due-order-of-pleading" requirement—a situation not present here. The court did not cite or discuss *Lippmann*, and nothing in that opinion suggests to us that the court intended to modify the *Lippmann* tests in other contexts.

■ The San Antonio court's analysis either leads to a "catch twenty-two" or discourages plaintiffs from providing further notice before moving for judgment. If the court is correct and a defendant files something that is an answer for default purposes but not for summary judgment purposes, the plaintiff's ability to proceed would be frustrated through no fault of its own. In that instance, the defendant is actually rewarded for filing a deficient document; when there is any question about the effect of a defendant's filing, the plaintiff is encouraged to treat it as no answer for any purpose and move for default judgment—or otherwise spend additional time and money attempting to force the defendant to file a more sufficient pleading.[15] If, however, the document is treated as an answer for all purposes, the defendant is protected from having a default judgment entered, and it would receive at least twenty-one days notice that the plaintiff was moving for summary judgment. Consequently, we agree with Justice Angelini's concurrence that, "if a document constitutes an answer for any purpose, it should constitute an answer for all purposes." *Id.* at 596.

Dr. Kreit mailed three transmittal letters to the clerk's office in March. The first letter, dated March 2, 2004, referenced the cause number, confirmed his receipt of Young's amended petition because it transmitted a copy of that petition with the notation "refused for cause" on the citation and on each page of the petition, and identified the parties because the letter included a copy of the amended petition. Dr. Kreit's letter also included a copy of his federal pleading against Young's trial counsel. Dr. Kreit's address is shown in three places in that pleading. Consequently, the March 2 letter identified the parties, the case, and Dr. Kreit's current address and was, therefore, a general appearance. Dr. Kreit's general appearance waived any deficiencies in Young's citations and the return, and his eighth issue is overruled.

*B. Did the Trial Court Properly Grant Young's Motion for Partial Summary Judgment?*

■ Dr. Kreit argues that the trial court erred by granting Young's motion for partial summary judgment because the evidence was legally insufficient. We will apply the well-recognized standard of review for traditional summary judgments. Questions of law are reviewed de novo.

---

**15.** The San Antonio court's opinion provides no guidance for a plaintiff caught in this situation. We can envision no action on the plaintiff's part that would provide the defendant with greater due process protection in that situation than it would receive if a plaintiff moved for summary judgment and provided the notice required by the Rules of Civil Procedure. Instead, it appears that a recalcitrant party will actually have an incentive to engage in uncooperative behavior so as to deprive the plaintiff of the opportunity to move for summary judgment. We realize that trial courts have broad discretion to manage their dockets and that they can impose appropriate sanctions, but we do not believe that requiring plaintiffs to move for sanctions before they can file a motion for summary judgment is sound policy.

We also question what realistic options a trial court has in this situation and what additional burdens those options will impose upon the court and the plaintiff. For example, if the trial court orders a defendant to file a sufficient answer, this order must include an "or else." If the sanction is that the original document will be treated as an answer and the plaintiff allowed to proceed accordingly, the trial court may run afoul of *Hock's* ultimate holding, that a trial court cannot grant a summary judgment if it first finds that a pleading is not an answer. If the trial court's sanction is to strike the original filing, that would arguably require it to comply with all of the procedural requirements of imposing a death penalty sanction.

*St. Paul Ins. Co. v. Tex. Dep't of Transp.,* 999 S.W.2d 881 (Tex.App.-Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex.1979).

■ Young's summary judgment evidence was Dr. Kreit's deemed admissions. Dr. Kreit argues that the request for admissions is void because it was mailed to him before he made a general appearance. We have previously held that Dr. Kreit's March 2 correspondence constituted a general appearance. The request for admissions was mailed to him on May 7. He was, therefore, required to respond to Young's discovery requests, and his failure to do so resulted in deemed admissions.

■ Dr. Kreit argues that we should look beyond the deemed admissions, contending that his motion to dismiss for failure to state a claim upon which relief can be granted should be treated as a summary judgment response. The supreme court has held that issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal when reviewing a summary judgment. *Clear Creek Basin,* 589 S.W.2d at 677. We realize that Dr. Kreit proceeded pro se before the trial court. He is, however, still subject to the same rules of procedure as litigants who

retain counsel. *Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 184–85 (Tex.1978); *Holt v. F.F. Enters.,* 990 S.W.2d 756, 759 (Tex.App.-Amarillo 1998, pet. denied). Furthermore, even if Dr. Kreit had tendered his documentation as a summary judgment response, because Young was proceeding on deemed admissions, consideration of evidence refuting any of the admitted facts would have been inappropriate. *Reyes v. Int'l Metals Supply Co.,* 666 S.W.2d 622, 624 (Tex.App.-Houston [1st Dist.] 1984, no writ). Accordingly, we cannot say that the court was required to consider any pleading not expressly presented to it as a summary judgment response, and we may not do so now ourselves.

■ Dr. Kreit next argues that, even if we consider the deemed admissions, the evidence was legally insufficient. Dr. Kreit admitted that:

- he was Dr. Camil Kreit, MD, PA a/k/a Camil Ibrahim;

- he was Young's employer on January 27, 2002;

- Young was acting in the course and scope of her employment when the chair broke causing her to fall and to suffer injuries to her neck and back;

- he did not have workers' compensation insurance when Young was injured;

- he did not adequately train Young;

- he did not provide her with a safe workplace;

- he provided her with an unsafe chair in which to sit and perform her work duties;

- he withheld insurance premiums from her payroll check without providing insurance; and

- he failed to compensate her for working overtime hours.

Dr. Kreit argues that these admissions did not prove when Young's accident occurred or if she was working for him when the accident occurred. He also argues that the admissions failed to establish that he owed Young a duty or that he had a duty to train her concerning the safe use of an office chair. Finally, he contends that Young did not prove that any breach of duty proximately caused her injuries.

■■■ Young responds by directing us to *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex.1984), where the supreme court held that a default judgment establishes that the defendant's conduct caused the event upon which the claimant's suit is based. That decision, however, is inapplicable because Young's judgment was a summary judgment not a default judgment. It was her obligation to prove Dr. Kreit's liability as a matter of law. As a general rule, allegations in pleadings do not constitute competent summary judgment proof. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex.1995). Consequently, the allegations in her pleadings cannot supply any missing evidentiary points. If Dr. Kreit's liability was established, it was by the deemed admissions.

■■■ Dr. Kreit admitted that he was Young's employer. As an employer, Dr. Kreit had a continuous, nondelegable duty to provide her with a safe workplace and with reasonably safe instrumentalities with which to work. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex.1996) (safe workplace); *Brookshire Grocery Co. v. Goss*, 208 S.W.3d 706, 712 (Tex.App.-Texarkana 2006, no pet.) (safe instrumentalities). Dr. Kreit admitted that he breached his duty as an employer by not adequately training Young, by not providing her with a safe workplace, and by giving her an unsafe work chair. Dr. Kreit also admitted that Young was injured while in the course and

scope of her employment when her chair broke and she fell. Dr. Kreit's admissions establish a duty, a breach of that duty, and damages. They are, therefore, sufficient to prove that Dr. Kreit was liable as a matter of law for a negligence cause of action.

■■■ We agree, however, with Dr. Kreit that the admission that he withheld money for insurance premiums without providing insurance is insufficient to establish his liability for fraud. To recover for fraud, Young was required to prove (1) that a material representation (2) was false, (3) was either known to be false when made or was made recklessly without knowledge of its truth, (4) and was made with the intent that the representation be relied upon; (5) that it was relied upon; and (6) that it caused injury. *See Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929–30 (Tex.1996). The deemed admission is insufficient to establish each of these elements.

Dr. Kreit's first issue is granted in part. The trial court erred by entering summary judgment against him for fraud. The remainder of his first issue is overruled. This holding moots consideration of Dr. Kreit's seventh issue.

*C. Did Dr. Kreit Receive Sufficient Notice of the Trial Setting?*

■■■ The trial court sent a letter addressed to "Dr. Camil Kreit a/k/a Dr. Camil Ibrahim" on December 7, 2005. The letter stated:

The above entitled and numbered cause is set for **final hearing on February 3rd, 2006 at 9:30 A.M.** in the District Court of Polk County in *Livingston, Texas.* Please be advised that pursuant to rule 165a(1) of the Texas Rules of Civil Procedure, there is a possibility the case will be dismissed for

want of prosecution if you fail to appear at this hearing.

Dr. Kreit argues that this was insufficient notice that a trial would occur. We disagree. Due process requires "notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). Due process also requires that trial courts give prior notice of some potential actions, such as dismissal for want of prosecution. *See Villarreal v. San Antonio Truck & Equip.,* 994 S.W.2d 628 (Tex.1999) (notice of potential dismissal for want of prosecution under Tex.R. Civ. P. 165a is insufficient to provide notice of potential dismissal for want of prosecution under the court's inherent authority).

The notice that a "final hearing" would occur on February 3 was sufficient to advise the parties that all remaining issues would be resolved on February 3. The actions that occurred on February 3 are not inconsistent with this notice. We perceive no appreciable difference between advising Dr. Kreit that a trial would occur versus advising him that the final hearing would occur. Dr. Kreit was properly alerted to the pendency of the action and was given the opportunity to participate. The fact that he may not have fully appreciated this because he was proceeding pro se does not give rise to a constitutional violation. Dr. Kreit's second issue is overruled.

*D. Did the Trial Court Err by Denying Dr. Kreit a Jury Trial?*

■ Dr. Kreit next argues that he was improperly denied a jury trial. Dr. Kreit has waived this issue. He did not object to the lack of a jury until well into the second witness's testimony. This was untimely. *See Rodriguez v. Tex. Dep't of Mental Health & Mental Retardation,* 942 S.W.2d 53, 56 (Tex.App.-Corpus Christi 1997, no pet.) (a party waives its right to a jury trial by failing to object when the trial court undertakes to try the cause before the bench). Dr. Kreit's third issue is overruled.

*E. Are the Trial Court's Damage Findings Based Upon Sufficient Evidence?*

■ Dr. Kreit challenges the legal and factual sufficiency of Young's damage evidence. A trial court's factual determinations are reviewed for legal sufficiency under the same standards used to review a jury's verdict. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the prevailing party, indulging every inference in their favor. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

*1. Mental Pain and Anguish.*

■ Dr. Kreit argues first that the evidence is legally and factually insufficient to support the trial court's $150,000 mental anguish award. Young responds that Dr. Kreit waived this issue because the trial court's mental anguish award and pain and suffering awards were combined and because Dr. Kreit did not challenge her pain and suffering damages.[16] Dr.

---

**16.** The general rule is that an appellant who seeks to challenge a multi-element damage

Kreit responds that it was unnecessary to do so because the trial court did not award physical pain and suffering damages. At the conclusion of the trial, the court announced that it was awarding mental anguish damages of $150,000. The court did not mention any pain and suffering damages. The final judgment awarded Young $150,000 for past and future mental anguish and pain and suffering. Dr. Kreit requested findings of fact, and the trial court made the following damage findings:

> The Court found damages of $104,527.80 for past and future medical, $138,112 for past and future lost wages, $1,600 for fraud and $150,000 for mental pain and suffering, past and future.

The trial court's oral findings and the written findings of fact both confirm that it did not award any physical pain and suffering damages but, instead, found only mental anguish damages. Consequently, Dr. Kreit is correct, and he has not waived this issue.

 The Texas Supreme Court held in *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995), that mental anguish awards will pass a legal sufficiency review if evidence is presented describing "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." Most recently, the court held that "some types of disturbing or shocking injuries have been found sufficient to support an inference that the injury was accompanied by mental anguish." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex.2006).

In *Fifth Club*, the plaintiff was beaten at a nightclub by a security officer. His head was slammed against a concrete wall,

knocking him unconscious and fracturing his skull. At trial, he and his wife testified that he was still depressed, humiliated, non-communicative, unable to sleep, and angry; that he continued to have headaches and nightmares; and that his daily activities and his relationships with his wife and daughter continued to be detrimentally affected almost two years after the incident. He also presented evidence of the severity of his beating, the significant injuries he suffered to his head and body, his loss of consciousness, and his hospital visits. *Id.* The court held that this was sufficient to support an award of $20,000 for future mental anguish.

Young was awarded $150,000. Her entire mental anguish testimony was as follows:

Q. Okay. Linda, also, you have a claim for mental anguish and pain and suffering; is that correct?

A. Yes, sir.

Q. Both since the time of the accident and into the future; is that correct?

A. Yes, sir.

Q. And you are asking the Court to award you $250,000 for that claim; is that correct?

A. Yes, sir.

Young equates her physical injuries with those suffered by the plaintiff in *Fifth Club*. She asks us to consider her mental anguish testimony in conjunction with her testimony that she injured her neck and back when she fell, that she received treatment from Dr. Kreit but did not improve, that four years after the accident she was taking $60 worth of pain medication monthly, and that she could not work or do many other things.

award on appeal must address each element and show the evidence is insufficient to support the entire award. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 248 (Tex.

App.-Texarkana 2005, no pet.). If an appellant fails to address an element of damages, the appellant waives the sufficiency challenge. *Id.*

■ *Fifth Club* does not stand for the proposition that mental anguish damages can be inferred in all personal injury cases. The court's holding was premised on the existence of a disturbing or shocking injury. 196 S.W.3d at 797. Falling off of an office chair is not the type of shocking or disturbing injury that we believe the supreme court had in mind. Nor does Young's testimony distinguish a mental anguish claim from physical injuries such as pain and suffering or other forms of damage such as lost earnings and lost earning capacity. *Cf. Jackson v. Gutierrez*, 77 S.W.3d 898, 903 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (mental anguish must be distinguished from pain and suffering). Finally, not only must the factfinder have sufficient evidence to determine that mental anguish exists, it must also have sufficient evidence to justify the amount awarded. *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex.2002). Young provided the trial court with no evidence of the nature, severity, or degree of any mental anguish injury and, thus, no evidence with which to evaluate her claim.

■ Even if we are incorrect and there was some evidence to support a mental anguish claim, when all the evidence is considered, that evidence is factually insufficient. There was evidence that, in addition to her fall off of Dr. Kreit's office chair, Young had fallen at a restaurant two weeks previously, that she had been involved in an automobile accident where she injured her neck and was taken to the hospital, that she had advanced diabetes and diabetic neuropathy, and that she suffered from cardiac problems. This multiplicity of other potential health issues, compared to her conclusory mental anguish testimony, makes the trial court's award of $150,000 against the great weight and preponderance of the evidence. Dr. Kreit's fourth issue is sustained.

■ Ordinarily, a finding of legally insufficient evidence would require that we reverse and render. Dr. Kreit's prayer, however, asks this court to reverse and remand for a new trial. We realize that our authority is not limited by this request and that we may still reverse and render. *See, e.g., Kaspar v. Thorne*, 755 S.W.2d 151, 156–57 (Tex.App.-Dallas 1988, no writ). We recognize also that Tex.R.App. P. 43.3 expresses a preference for rendition in instances such as this. That rule, however, provides that a remand is still appropriate when required by the interests of justice. We believe that such a situation is present here.

First, Dr. Kreit's own conduct, as outlined in this opinion, has interfered with the development of this case. Secondly, the record does not indicate that Young suffered no mental anguish but that she failed to adequately develop it. Finally, remand is consistent with Dr. Kreit's requested relief. Consequently, the trial court's mental anguish award is reversed and is remanded for a new trial.

2. *Lost Wages.*

■ Dr. Kreit next argues that the evidence is legally and factually insufficient to support the trial court's award of $138,112 for past and future lost wages. Young testified as follows:

Q. Okay. Now, how old were you at the time this accident occurred, the injury occurred?

A. 57.

Q. Okay. And how much were you making, or how were you being paid when you were working for Dr. Kreit?

A. On an hourly basis.

Q. How much?

A. $8.30 an hour.

Q. And was your intentions to work through age 65?

A. At least.

Q. Okay. So if you calculate your lost wages, both past and future, would that figure be $138,112 through age 65?

A. Yes, sir.

On cross-examination, she testified:

Q. Okay. And that—did it show anything other than the carpal tunnel that you still have?

A. Yes, sir. That showed a bulging disk, a neck injury, lower spine injury. I have had injections put into my spine. I'm fixing to have one put into my neck here in a couple of weeks. I have been on a lot of medication. I have—due to the fact that I can't do a lot of things that I used to do.

Q. Well—

A. One thing is working. I love my job. I was very loyal to you all.

Dr. Kreit argues that this is insufficient because there was no evidence that Young was not working at the time of trial, was unable to work, or would be unable to return to work. Considering this evidence in a light most favorable to Young, it is some evidence that she was not working at the time of trial. Young testified without objection that she would need future surgery. That is some evidence that she will miss more work in the future. The trial court, therefore, had evidence of past and future lost earnings. The trial court's award, however, presumes that Young's fall will prevent her from ever returning to work. There was no evidence that Young is permanently disabled. The absence of any evidence to support this assumption means that the lost wages award lacks factually sufficient evidence. Dr. Kreit's fifth issue is sustained. The trial court's

lost wages award is reversed, and this issue is remanded for a new trial.

### 3. Medical Expenses.

The trial court awarded Young $104,527.80 for past and future medical expenses. Young testified that she received a bill from Dr. Kreit that was over $3,000, that she was taking medication costing approximately $60 per month, that she had been told that she would need future surgery, and that the total cost of her medical expenses, including surgery, would be $104,527.80. Dr. Lynn Lanier Pearson testified by deposition. He said that Young suffered from a C–6 neuropathy and spinal stenosis at L–4/L–5. He also testified that there is a "good chance" that she will need neck and back surgery.

Dr. Kreit argues that this testimony is legally and factually insufficient. To recover for past medical expenses, a plaintiff must prove the actual amount of the expenses incurred and that those expenses were reasonable and necessary. See Quaker Petroleum Chems. Co. v. Waldrop, 75 S.W.3d 549, 553–54 (Tex.App.-San Antonio 2002, no pet.). A plaintiff can prove reasonableness and necessity of past medical expenses by either (1) presenting expert testimony on the issues of reasonableness and necessity or (2) presenting an affidavit prepared and filed in compliance with TEX. CIV. PRAC. & REM.CODE ANN. § 18.001 (Vernon Supp.2007).

The award of future medical expenses lies within the discretion of the factfinder. City of San Antonio v. Vela, 762 S.W.2d 314, 321 (Tex.App.-San Antonio 1988, writ denied). To sustain an award of future medical expenses, the claimant must present evidence to establish that, in all reasonable probability, future medical care will be required and to establish the reasonable cost of that care. Whole Foods Mkt. Sw., L.P. v. Tijerina, 979 S.W.2d 768,

781 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Although the preferred practice for establishing future medical costs is through expert medical testimony, there is no requirement that the claimant establish such costs through expert testimony. *Id.* Because no precise evidence is required, the factfinder may award future medical damages based upon the nature of the injury, the medical care rendered prior to trial, and the condition of the injured party at the time of trial. *Vela,* 762 S.W.2d at 321.

Dr. Pearson was asked:

Q. And did these conditions in her back and her neck did they become symptomatic from your conversations with Ms. Young that correlated to the fall out of the chair?

A. Yes.

Q. Since you have taken conservative treatment and care of Ms. Young, has it come to your conclusion that surgery most likely will be necessary?

A. Yes. There is a good chance that it will be needed.

Q. And what type of procedures would be done on her neck and lower back?

A. On the neck it would be a cervical discectomy with an anterior cervical fusion.

Q. What about lower back?

A. Low back, I feel she may respond with epidural steroids; or if surgery is done, it will be a decompression of the posterior elements of the lumbar spine.

Dr. Kreit complains that this testimony is insufficient because Dr. Pearson said there was a "good chance" surgery would be necessary and because he prefaced his decompression testimony by saying "if surgery is done." Dr. Kreit contends that this testimony does not establish that in reasonable probability future surgery will be necessary. We disagree. Dr. Pearson's testimony must be considered in connection with the question. He was asked if surgery "most likely will be necessary." His immediate response was, "Yes." His subsequent statement that there is a good chance surgery will be required is not inconsistent with this initial response. Similarly, the fact that he wanted to try an epidural steroid before operating on her lower back does not preclude an award for the costs of a lower back surgery. Attempting a more conservative treatment first because Young *might* respond is simply good medicine and does not detract from the doctor's earlier testimony. The trial court could also consider the fact that four years of conservative treatment had not alleviated Young's condition. Dr. Pearson's testimony is legally and factually sufficient evidence that Young will need neck and back surgery.

Dr. Pearson testified that each surgery will cost approximately $6,500 for the surgeon and $30,000 to $40,000 for the hospital. Young testified that she had received a bill from Dr. Kreit for $3,000 and that she was spending $60 per month for medication. There is legally and factually sufficient evidence to support the trial court's award of $104,527.80 in past and future medical expenses. Dr. Kreit's sixth issue is overruled.

## IV. *Holding*

The judgment of the trial court is affirmed in part and reversed and remanded in part. That portion of the judgment finding Dr. Kreit liable for a negligence cause of action and awarding Young past and future medical expenses of $104,527.80 is affirmed. That portion of the judgment finding Dr. Kreit liable for fraud and awarding Young fraud damages, past and

future lost wages, and past and future mental anguish is reversed; and these issues are remanded for a new trial.