COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IRMA CONTRERAS, | § | No. 08-10-00160-CV |
| Appellant, | § | Appeal from the |
| v. | § | 448th District Court |
| CLINT INDEPENDENT SCHOOL | § | of El Paso County, Texas |
| DISTRICT AND ACCESS | | |
| ADMINISTRATORS, INC., | § | (TC# 2009-041) |
| Appellees. | § | |

**O P I N I O N**

Irma Contreras, Appellant, appeals the trial court's summary judgment in favor of Clint Independent School District and Access Administrators, Inc., Appellees, stemming from her suit for breach of contract. In six issues, Contreras attacks whether a material fact existed, whether the submitted expert's opinion was relevant, and whether Appellees were entitled to rely on their affirmative defenses of accord and satisfaction, release, and res judicata. We affirm.

**BACKGROUND**

On July 8, 2003, Irma Contreras had gastric bypass surgery, which Appellees paid for. She then lost over one hundred pounds, prompting Dr. Dale Reynolds to recommend that Contreras undergo five surgical procedures, which he believed were medically necessary, that consisted of excision of excessive skin and subcutaneous tissues of the thighs, buttocks, abdomen, breasts, and arms. Appellees, however, refused to pay for those surgeries, claiming that they were cosmetic. In response, Contreras sued Appellees for breach of contract, breach of fiduciary duty, and engaging in unfair settlement practices.

After much negotiation, the parties settled the dispute and signed a settlement agreement.

According to the terms of the agreement, Appellees agreed to pay the costs for the five surgeries recommended by Dr. Reynolds, including a sixth surgery for lipectomy, and any complications resulting therefrom. The settlement agreement also stated that in consideration for the sums paid by Appellees, Contreras would release, acquit and forever discharge Appellees from any and all claims, demands, and causes of actions growing out of, resulting from, or connected in any way with those claims constituting the subject matter of the lawsuit. In addition, Contreras executed an Agreed Order of Dismissal with prejudice for her causes of action against Appellees.

Six months after receiving the surgeries listed in the settlement agreement, Dr. Miller informed Contreras that an additional four revision surgeries were needed due to skin laxity. Those surgeries included revision of excess skin of the thigh, revision of excision of excess skin of the left arm, revision of excess skin of the abdomen, and revision of suction assisted lipectomy of the trunk. And on March 9, 2007, Dr. Miller performed ten surgical procedures for skin laxity, which he believed were medically necessary. However, Appellees refused to pay for those procedures, claiming that they were cosmetic and did not arise from complications from the previous surgeries.

Consequently, on January 6, 2009, Contreras filed suit against Appellees, claiming breach of contract. In essence, Contreras argued that her revision surgeries were complications arising from her previous surgeries, and therefore, pursuant to the settlement agreement, Appellees were obligated to pay for them. In response, Appellees moved for summary judgment, alleging affirmative defenses of accord and satisfaction, release, and res judicata, and that they did not breach the settlement agreement as Contreras' revision surgeries were not complications resulting from the previous surgeries. In support of their motion, Appellees attached a letter and affidavit by Dr. Henderson, which opined that the revision surgeries performed were cosmetic in nature and were not due to any complications resulting from the previous surgeries. Contreras responded to Appellees' motions for

summary judgment by attaching an affidavit from Dr. Miller, which stated that the surgeries were medically necessary. After entertaining arguments on the matter, the trial court granted Appellees' motion, finding that there were no genuine issues of material fact to be resolved.

## DISCUSSION

Contreras now raises six issues for our review. Issue One alleges that a material fact existed as to whether the revision surgeries resulted from previous surgical complications. Issues Two, Three, and Four challenge whether Appellees' summary-judgment evidence was legally sufficient to defeat Contreras' breach-of-contract claim. And Issues Five and Six contest whether the trial court erred by granting summary judgment on Appellees' claims for accord and satisfaction, release, and res judicata. For the reasons discussed below, we find no merit in any of the issues raised.

## Genuine Issue of Material Fact

In Issue One, Contreras asserts that the trial court erred by finding no genuine issue of material fact existed concerning whether her revision surgeries were complications arising from her previous surgeries. According to Contreras, two items of evidence raised such material facts: (1) Dr. Miller's affidavit, which opined that the surgeries were medically necessary; and (2) Dr. Henderson's letter, which acknowledged that the doctors in his office perform revision surgical procedures at no cost "since [they] feel that [they] should have removed enough skin the first time . . . ." Relying on those two pieces of evidence, Contreras asserts that there is an inference that any leftover excess skin was a complication from the original surgeries, that is, that Dr. Miller failed to remove enough skin the first time.

### Standard of Review

We review *de novo* a trial court's decision to grant a motion for summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When moving for summary judgment,

the movant bears the burden of showing that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In determining whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548-49. When the defendant moves for summary judgment, he must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense to be entitled to summary judgment as a matter of law. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). The burden then shifts to the plaintiff to produce competent controverting summary judgment evidence that raises a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If no genuine issue of material fact exists, summary judgment, therefore, should be granted as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001).

*Application*

Here, Dr. Miller claimed that the revision surgeries were necessary to remove excess skin so that Contreras' skin would not lose its elasticity. Thus, he concluded that "the revision surgeries performed by me were medically necessary and not for cosmetic purposes." However, the issue before the trial court was not whether the surgeries were medically necessary to achieve the objective of reducing the amount of loose skin, but whether the surgeries were due to complications arising out of the previous surgeries. Although the affidavit explained why Dr. Miller believed the surgeries were medically necessary, it did not state that the necessity arose from medical complications from the previous surgeries. In short, Dr. Miller's affidavit did not controvert Appellees' medical expert's opinion, stating that the revision surgeries were not the result of any complications resulting from the previous surgeries.

Contreras also asserts that Dr. Henderson's letter provided an inference that her revision surgeries were due to complications. Specifically, she points to Dr. Henderson's statements that the doctors in his office do such additional surgical procedures for patients at no cost "since we feel that we should have removed enough skin the first time, so we would not have to go back to surgery." Thus, she alleges that had Dr. Miller removed enough excess skin during the previous surgeries, she would not have had to undergo the additional surgeries.

However, Dr. Henderson's letter never opined that additional excess skin is a complication from the previous surgeries. Indeed, nothing in his letter opinion or affidavit establishes that loose skin is a complication from such a surgery. According to the definition of "complication," which Dr. Henderson provided to the trial court, a postoperative complication is a "hematoma, wound breakdown or dehiscence, pulmonary embolism, heart attack, stroke, infection or death." Loose skin, according to the summary judgment record, has never been included within that category. Thus, we decline, as did the trial court, to infer that Dr. Henderson's letter could establish that Contreras' additional revision surgeries were due to surgical complications.

In summary, because Contreras produced no evidence controverting Appellees' expert evidence that her revision surgeries were not due to complications, we hold that the trial court did not err by holding no material fact existed as to whether the complained-of surgical procedures were complications encompassed by the settlement agreement. *See Jordan v. Geigy Pharm.*, 848 S.W.2d 176, 180 (Tex. App. – Fort Worth 1992, no pet.) (concluding that because appellant failed to meet appellee's summary-judgment proof with competent controverting evidence, summary judgment was proper). Therefore, since Contreras could not prove that Appellees breached the settlement agreement, her breach-of-contract claim failed, and Appellees were entitled to summary judgment as a matter of law. *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App. – Houston

[1st Dist.] 2009, pet. denied) (stating that the "essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach"); *see also Sci. Spectrum*, 941 S.W.2d at 911 (stating that if the defendant conclusively negates at least one essential element of the plaintiff's cause of action, he is entitled to summary judgment as a matter of law). Issue One is overruled.

## Legal Sufficiency

Contreras' next three issues challenge whether Appellees' summary-judgment evidence was legally sufficient to defeat Contreras' breach-of-contract claim. We apply the same standard of review as cited above for reviewing legal sufficiency challenges to motions for summary judgments. *See Ibrahim v. Young*, 253 S.W.3d 790, 802 (Tex. App. – Eastland 2008, pet. denied). Of course, if the movant's summary judgment proof is legally insufficient, the nonmovant need not even respond to it. *M.D. Anderson Hosp. and Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

### *Was Dr. Henderson's Opinion Relevant?*

In Issue Two, Contreras asserts that Dr. Henderson's affidavit is irrelevant to whether Appellees breach the settlement agreement by refusing to pay for her revision surgeries. She argues that Dr. Henderson's opinion concerning whether insurance companies generally cover second revision surgeries and whether Dr. Miller should be paid for such surgeries was not relevant to the meaning of the term "complication" as used in the settlement agreement. Rather, Contreras alleges that those statements go to the interpretation of an insurance contract or to the standard of care governing Dr. Miller's ability to charge for the revision surgeries. They do not, according to Contreras, ascribe a meaning to the term "complication" as that term is interpreted within the medical community and thus the settlement agreement.

The parties did not define the term "complication" in the settlement agreement. Although extrinsic evidence is generally not admissible to vary the terms of an unambiguous agreement, extrinsic evidence may "be admissible to give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to 'interpret' contractual terms." *Mescalero Energy, Inc. v. Underwriters Indem. General Agency, Inc.*, 56 S.W.3d 313, 320 (Tex. App. – Houston [1st Dist.] 2001, pet. denied) (quoting *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995)). And expert testimony may be useful in explaining the commonly understood meaning in the industry of a specialized term. *Mescalero*, 56 S.W.3d at 320. In medical cases, the general rule is that expert testimony is necessary to establish causation as to medical conditions laying outside the common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). Therefore, whether complications arose from the surgical procedures performed on Contreras and more specifically, whether excess skin is a complication from those previous surgeries, would require expert testimony as that is not within the realm of lay knowledge and experience.

And here, Dr. Henderson did provide a medical definition of "complication" by stating that a complication is a "hematoma, wound breakdown or dehiscence, pulmonary embolism, heart attack, stroke, infection or death." As noted by Appellees, that definition is found on the Medical University of South Carolina's website. *See* After Surgery: Discomforts and Complications, available at *http://www.muschealth.com/gs/healthtopic.aspx?action=showpage&pageid=P01390* (last visited Aug. 8, 2011). Moreover, Dr. Henderson opined that Contreras' loose skin was not a complication arising from the surgical procedures performed. These are not matters within the realm of lay knowledge and experience. In other words, Dr. Henderson's definition of "complication," as that term is interpreted within the medical community, was relevant to give the settlement term a

meaning consistent with that to which it was reasonably susceptible, and we cannot say that the trial court abused its discretion by accepting Dr. Henderson's definition of complication. *See XCO Production Co. v. Jamison*, 194 S.W.3d 622, 629 n.4 (Tex. App. – Houston [14th Dist.] 2006, pet. denied) (determining that expert tax lawyer's interpretation of terms in partnership agreement was admissible to explain their specialized meaning); *Presswood v. Goehring*, No. 01-04-00134-CV, 2005 WL 1365188, at *3 (Tex. App. – Houston [1st Dist.] 2005, no pet.) (mem. op., not designated for publication) (noting that medical terminology is unfamiliar to laypersons). Issue Two is overruled.

*Was Dr. Henderson's Opinion Free from Contradiction and Inconsistencies?*

In Issue Three, Contreras contends that the trial court erred by not excluding Dr. Henderson's affidavit for the reasons that it was controverted, that it addressed a subject matter for which the trier of fact did not need to be guided by an expert, and that it was not clear, positive, and direct, or free from contradictions and inconsistencies. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam) (summary judgment may be granted on the "uncontroverted testimony of an expert witness if the subject matter is such that a trier of fact would be 'guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted'") (quoting TEX. R. CIV. P. 166a(c)). However, we have already determined that Dr. Miller's affidavit did not controvert Dr. Henderson's opinion, and that expert medical testimony was necessary to establish the meaning of "complication" within the settlement agreement; thus, we do not address these arguments further. Moreover, we decline to address Contreras' third argument, namely, whether Dr. Henderson's affidavit was free from contradictions and inconsistencies, finding the same to be inadequately briefed.

The Rules of Appellate Procedure require the briefing party to provide a legal argument and authorities that support that argument to maintain the point at issue. *See* TEX. R. APP. P. 38.1; *Dodge v. Dodge*, 314 S.W.3d 82, 85 (Tex. App. – El Paso 2010, no pet.); *Ratsavong v. Menevilay*, 176 S.W.3d 661, 666 (Tex. App. – El Paso 2005, pet. denied), *cert. denied*, 549 U.S. 886, 127 S.Ct. 253, 166 L.Ed.2d 149 (2006). This is not done by merely uttering brief conclusory statements, unsupported by analogous legal authority. *Dodge*, 314 S.W.3d at 85.

Here, Contreras asserts in three conclusory sentences that Dr. Henderson's opinion that her revision surgeries were not to treat complications contradicted his earlier statements that insurance companies may consider skin laxity a medical problem as it can result in yeast, fungal, and bacterial infections. She does not provide any argument explaining how the statements render the affidavit inconsistent, nor does she cite to authority holding such statements create inconsistencies. Accordingly, we hold Contreras failed to adequately brief her argument. *In re Estate of Rogers*, 322 S.W.3d 361, 363 n.1 (Tex. App. – El Paso 2010, no pet.); *Sterling v. Alexander*, 99 S.W.3d 793, 799 (Tex. App. – Houston [14th Dist.] 2003, pet. denied) (cases holding issue inadequately briefed when party failed to cite any authority and to make a cogent argument). Issue Three is overruled.

*Defining "Complication"*

In Issue Four, Contreras argues that the trial court improperly allowed Dr. Henderson to craft his own definition of complication, rather than apply a dictionary or ordinary meaning to the term. However, we have already concluded that expert medical testimony was necessary to establish the meaning of complication as that term is defined within the medical community and also within the settlement agreement. Moreover, to the extent that Contreras argues that Appellees failed to provide any definition in their summary judgment motion that supported Dr. Henderson's view that the revision surgeries were not due to complications from the previous surgeries, our review of the

record has found two such definitions cited by Appellees: (1) that a "complication is an unexpected medical event directly resulting from the performance of a surgery . . . [which include] shock, hemorrhage, wound infection, deep vein thrombosis, pulmonary complications, urinary retention and reaction to anesthesia;" and (2) that a "surgical complication is any undesirable, unintended, and direct result of surgery affecting the patient which would not have occurred had the surgery gone as well as could reasonably be hoped." The first definition appears on the Medical University of South Carolina's website, and the second definition comes from the World Journal of Surgery. Thus, Contreras' arguments on these grounds fail.

Contreras further asks us to apply her own definition of complication as found at an online medical cite, *www.medicinenet.com*. However, Contreras did not present her definition to the trial court. "Issues not expressly presented to the trial court by written motion, answer or other response" to the motion for summary judgment "shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). Indeed, a party cannot raise new reasons why a summary judgment should have been denied for the first time on appeal. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). Accordingly, Issue Four is overruled.

**Accord and Satisfaction, Release, and Res Judicata**

Contreras' next two issues are fairly simple, and we will not dwell on them for long. In her fifth issue, Contreras asserts that the trial court abused its discretion by granting summary judgment on grounds of accord and satisfaction, release, and res judicata when Appellees, according to the terms of the settlement agreement, agreed to not only pay for the costs of certain surgeries, but also the costs of any complications resulting from those procedures. In essence, Contreras maintains that her skin laxity was a complication from those procedures, which invoked her breach-of-contract claim and made Appellees' affirmative defenses of accord and satisfaction, release, and res judicata

irrelevant. Similarly, in her sixth issue, Contreras alleges that Appellees' failed to specifically allege how their affirmative defenses of accord and satisfaction, release, and res judicata applied to her issue that Appellees would pay for any complications resulting from her previous surgeries.

However, it is clear from a reading of Appellees' motion for summary judgment, that they were asserting that Contreras' revision surgeries were not complications from her previous surgeries, and therefore, she could not succeed on her breach-of-contract claim. And because there was no evidence that Appellees breached the settlement agreement, Appellees contended that Contreras' additional revision surgeries were new surgeries from which Contreras already agreed to financially release Appellees from. Thus, Appellees' affirmative defenses of accord and satisfaction, release, and res judicata were not only relevant to Contreras' breach-of-contract claim, but also specifically tailored to that claim in their motion. Accordingly, Issues Five and Six are overruled.

## CONCLUSION

Having overruled Contreras' issues, we affirm the trial court's judgment.[1]


GUADALUPE RIVERA, Justice

August 10, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

---

[1] Appellees raise other issues as to why summary judgment was proper, but we have already implicitly addressed those issues in our discussion above. Moreover, we need only address those issues necessary to final disposition of the appeal. *See* TEX. R. APP. P. 47.1.