Opinion filed August 13, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed August 13,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00318-CV 

                                                    __________

 

                                 RENTECH STEEL, L.L.C., Appellant

 

                                                             V.

 

   PRESTON TEEL, LESA
CROSSWHITE, AND JENNINGS TEEL, Appellees

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor
County, Texas

 

                                                   Trial
Court Cause No. 7813-D

 



 

                                                                   O
P I N I O N

 








Preston
Teel and his parents, Lesa Crosswhite and Jennings Teel, sued Rentech Steel,
L.L.C.[1] after Preston
sustained serious bilateral hand injuries while cleaning a power roller machine
that draws in steel plates and rolls them into a cylindrical shape.  Preston
was sixteen years old at the time of the accident and had recently begun a
summer job at Rentech, a steel fabrication plant.  The plaintiffs alleged
negligence and gross negligence.  At trial, Rentech admitted making mistakes
and accepted responsibility for the accident.  The jury found that Rentech was
negligent, but not grossly negligent, and awarded actual damages of $11,850,000
to Preston and $620,000 to Preston=s
parents.  After reducing Preston=s
award by the $1,900,000 settlement credit and adding prejudgment interest to
the awards, the trial court rendered judgment on the jury=s verdict against Rentech
for a total of $11,339,221.  Rentech appeals, challenging the jury=s findings regarding
damages and Rentech=s
sole responsibility for the accident.  We affirm in part and modify in part,
conditioned on remittitur. 

                                                                 Issues
on Appeal

In
Issue I, Rentech challenges the jury=s
failure to find that Bertsch/Mega and Rentz Family Partnership Ltd. were liable
for either negligence or products liability.  In Issue II, Rentech challenges
the legal and factual sufficiency of the evidence in support of the awards for
past and future medical expenses and also argues that the trial court erred in
disregarding Rentech=s
legal entitlement to a credit for its payment of past medical expenses.  In
Issue III, Rentech asserts that the damages awarded by the jury were excessive
under the existing standards.  Under this issue, Rentech also urges this court
to adopt and apply a new, more objective standard to determine whether damages are
excessive. 

                                                              Standards
of Review








To
address Rentech=s
legal and factual sufficiency challenges, we will apply the following standards
of review.  When a challenge is made to the legal sufficiency, we must
determine whether the evidence at trial would enable reasonable and fair‑minded
people to reach the verdict under review.  City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  We must review the evidence in the light most
favorable to the challenged finding, crediting any favorable evidence if a
reasonable factfinder could and disregarding any contrary evidence unless a
reasonable factfinder could not.  Id. at 821‑22, 827.  We may
sustain a no‑evidence or legal sufficiency challenge only when (1) the
record discloses a complete absence of a vital fact, (2) the court is barred by
rules of law or evidence from giving weight to the only evidence offered to
prove a vital fact, (3) the only evidence offered to prove a vital fact is no
more than a mere scintilla, or (4) the evidence conclusively establishes the
opposite of a vital fact.  Id. at 810 (citing Robert W. Calvert, ANo Evidence@ and AInsufficient Evidence@ Points of Error, 38 Tex. L. Rev. 361, 362‑63
(1960)).  When a party attacks the legal sufficiency of an adverse finding on
an issue on which that party had the burden of proof, the party must
demonstrate on appeal that the evidence conclusively establishes, as a matter
of law, all vital facts in support of the issue.  Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001). 

To
analyze a factual sufficiency challenge, we must consider and weigh all of the
evidence and determine whether the evidence in support of a finding is so weak
as to be clearly wrong and unjust or whether the finding is so against the
great weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust.  Id. at 242; Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986); In re King=s
Estate, 244 S.W.2d 660, 661 (Tex. 1951).  

In
applying these standards, we are mindful that the jury is the sole judge of the
witnesses= credibility
and the weight to give to their testimony.  City of Keller, 168 S.W.3d
at 819.  Jurors may choose to believe one witness and disbelieve another and
may disregard even uncontradicted and unimpeached testimony from disinterested
witnesses.  Id. at 819-20.  Furthermore, even uncontroverted expert
testimony does not bind the jury unless the subject matter is one for experts
alone B one for which
jurors Acannot
properly be assumed to have or be able to form correct opinions of their own
based upon evidence as a whole and aided by their own experience and knowledge
of the subject of inquiry.@ 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 338 (Tex. 1998)
(quoting McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986)); see
also City of Keller, 168 S.W.3d at 820. 

                                                                Liability
of Others








Relying
on the uncontroverted testimony of an expert witness, Rentech argues in Issue I
that the negligence of Bertsch/Mega and Rentz Family Partnership and the
marketing and design defects of the power roller machine were conclusively
established and, alternatively, that the jury=s
negative answers were contrary to the overwhelming weight of the evidence. 
Rentech contends that settling defendants  Bertsch/Mega and Rentz Family
Partnership were also responsible for Preston=s
injuries.  Bertsch/Mega manufactured the machine, and Rentz Family Partnership
owned the machine but had leased it to Rentech.  The jury was asked whether the
negligence, if any, of Bertsch/Mega, Rentz Family Partnership, or Rentech
proximately caused the occurrence in question.  The jury answered affirmatively
as to Rentech only.  The jury was also asked whether there was a marketing
defect or a design defect in the power roller machine when it left Bertsch/Mega
or Rentz Family Partnership that was a producing cause of the occurrence in
question.  The jury answered each question, ANo.@  These answers indicate
that the jury failed to find that Rentech carried its burden of proof by a
preponderance of the evidence.  See C. & R. Transport, Inc. v. Campbell,
406 S.W.2d 191, 194 (Tex. 1966). 

In
this case, the only evidence regarding the conduct of Bertsch/Mega and Rentz
Family Partnership came from William W.R. Purcell, an expert retained by the
plaintiffs but called as a witness at trial by Rentech.  Purcell had degrees in
civil engineering and safety engineering and over forty years of experience in
these fields, and he was a certified safety professional.  Purcell conducted an
investigation and determined that Bertsch/Mega and Rentz Family Partnership did
not comply with applicable safety standards because they failed to place
adequate warnings in the danger zone on the sides of the machine and failed to
provide adequate instructions and warnings for cleaning the machine.  Purcell
concluded that the machine was unreasonably dangerous because of marketing
defects and inadequacies in the manuals and warnings.  Purcell also implicated
Rentech for various failures and violations of safety standards.  Although
Purcell did not testify about causation, he indicated in a single finding in a
report that was admitted into evidence that the Aunreasonably
dangerous conditions and design defects, failures, and associated negligent
acts of commission or omission, on the part of Bertsch and Rentech . . . were
more than likely producing and proximate causes of the incident and related
injuries.@  This
conclusion was also made applicable to Mega and Rentz Family Partnership in a
subsequent report.








In
this case, causation was not a matter for experts alone and did not require a
technical or scientific explanation; it was within the jury=s ability to determine on
its own what caused the accident and resulting injuries.  See K‑Mart
Corp. v. Honeycutt, 24 S.W.3d 357, 361 (Tex. 2000) (holding that it was
within the jury=s
ability to determine on its own whether lack of a railing caused the
accident).  Because causation was not an issue for experts alone, the jury
could have disregarded Purcell=s
conclusion as to causation.  The jury was free to conclude based upon the
evidence presented at trial that Rentech failed to prove by a preponderance of
the evidence (1) that the negligence of Bertsch/Mega or Rentz Family
Partnership was a cause of the accident and (2) that a marketing or design
defect was a cause of the accident.  Other evidence before the jury included
pictures of the actual roller machine and the warnings already located on the
machine; testimony from a Rentech employee who operated the machine that a
manual containing Bertsch=s
operating instructions had previously been supplied to Rentech; and testimony
indicating that the Rentech employee operating the machine was knowingly
violating the safety warnings and company policy at the time of the incident. 
Furthermore, evidence proving a safer alternative design was lacking.  See
Gen. Motors Corp. v. Sanchez, 997 S.W.2d 584, 588 (Tex. 1999) (a safer
alternative design must be proven in order to recover under a design defect
theory).  

We
hold that the evidence is both legally and factually sufficient to support the
verdict with respect to Bertsch/Mega and Rentz Family Partnership.  Rentech did
not conclusively establish a causal nexus between the accident and Bertsch/Mega
and Rentz Family Partnership.  Further, the jury=s
findings regarding Bertsch/Mega and Rentz Family Partnership were not so
against the great weight and preponderance of the evidence as to be clearly
wrong and manifestly unjust.  Issue I is overruled.  

                                                                Medical
Expenses

In
Issue II, Rentech challenges the legal and factual sufficiency of the evidence
in support of the awards for past and future medical expenses and also argues
that the trial court erred in disregarding Rentech=s legal entitlement to a credit for its
payment of past medical expenses.  Based upon the jury=s findings, the trial court awarded past
medical expenses of $550,000 to Preston=s
parents and future medical expenses of $1,000,000 to Preston.

With
respect to past medical expenses, Preston and his parents agree that the amount
awarded exceeds the amount proved at trial.  All parties agree that the amount
of past medical expenses actually proved at trial was $381,788.  Preston and
his parents state in their brief that they will accept a reduction to that
amount.  They assert that a remittitur of $168,212 is the proper remedy. 
Rentech contends, however, that a remittitur is not the proper remedy because
there is no evidence to support the award of $550,000 and that we must reverse
the judgment and remand the cause for a new trial. 








The
Texas Supreme Court has employed both of these remedies in various cases where
there was evidence to support some damages but no evidence to support the
amount awarded by the jury.  Guevara v. Ferrer, 247 S.W.3d 662, 670
(Tex. 2007).  The court in Guevara noted that a remittitur was
determined to be the appropriate remedy in Tony Gullo Motors I, L.P. v.
Chapa, 212 S.W.3d 299 (Tex. 2006), whereas a remand for a new trial was
ordered in Minnesota Mining & Manufacturing Co. v. Nishika Ltd., 953
S.W.2d 733 (Tex. 1997).  In Guevara, the evidence was legally
insufficient to show that the car accident caused all of the medical expenses
awarded by the jury, and the supreme court determined that the proper remedy
was to remand to the court of appeals to consider a remittitur as to expenses
for which expert evidence was required.  247 S.W.3d at 670.  The Guevara
court also stated that, if an appropriate remittitur cannot be determined, then
the court of appeals should remand the case to the trial court for a new
trial.  Id.  

Relying
on Guevara, we believe the circumstances in this case to be appropriate
for remittitur.  An appropriate remittitur is determinable in this case.  After
reviewing the record and considering the briefs, we agree with the parties that
the amount of past medical expenses supported by the evidence admitted at trial
is only $381,788, not $550,000 as found by the jury.  Therefore, we suggest a
remittitur in the amount of $168,212.  Tex.
R. App. P. 46.3.  

Rentech
also asserts that it was entitled to a credit for its payment of past medical
expenses.  The plaintiffs assert that Rentech was not entitled to any such
credit because the payments were made by an insurance company and were subject
to the collateral source rule.








The
theory behind the collateral source rule is that a wrongdoer should not have
the benefit of insurance independently procured by the injured party and to
which the wrongdoer was not privy.  Brown v. Am. Transfer & Storage Co.,
601 S.W.2d 931, 934 (Tex. 1980).  However, when the wrongdoer Ahas provided for those
damages, either by personal payment or insurance payment, the damage claim has
been satisfied@; to
permit the injured party in such circumstances to keep the insurance money and
also collect from the wrongdoer Awould
be a double recovery not sanctioned by law.@ 
Id. at 935 (citing Publix Theatres Corp. v. Powell, 71 S.W.2d 237
(Tex. 1934)).  Payments made pursuant to an employee benefit plan have been
determined to be a collateral source if the benefit plan constitutes a fringe
benefit for the employee, but if the primary purpose of the benefit plan is to
protect the employer, then the plan is not a collateral source as against the
employer.  Johnson v. Dallas County, 195 S.W.3d 853, 855 (Tex. App.CDallas 2006, no pet.); Taylor
v. Am. Fabritech, Inc., 132 S.W.3d 613, 626 (Tex. App.CHouston [14th Dist.] 2004,
pet. denied); Castillo v. Am. Garment Finishers Corp., 965 S.W.2d 646,
650 (Tex. App.CEl Paso
1998, no pet.); Tarrant County Waste Disposal, Inc. v. Doss, 737 S.W.2d
607, 611 (Tex. App.CFort
Worth 1987, writ denied) (holding that payments made by an employer=s insurance carrier under
its accident policy covering on-the-job injuries do not constitute a collateral
source and that the nonsubscriber employer was entitled to an offset).  

The
right of offset is an affirmative defense.  The burden of pleading offset and
of proving the facts necessary to support it are on the party asserting the
right to an offset.  Brown, 601 S.W.2d at 936.  The record in this case
shows that Rentech asserted its right of offset both in its pleadings and
during trial.  Outside the presence of the jury, Rentech offered proof from
Rentech employee Robin Walker, who was the plan administrator for Rentech=s occupational injury
benefit plan. Walker testified that Rentech was not a workers= compensation subscriber
but that Rentech had purchased an occupational injury benefit plan to pay
expenses related to employees=
on-the-job injuries and also to protect Rentech from liability from lawsuits
arising out of any such injuries.  Rentech=s
occupational injury benefit plan provided that it was adopted to provide prompt
payment of a participant=s
covered expenses and Ato
limit the Company=s
liability when a Participant is injured.@ 
Furthermore, the plan defined benefits as Athe
payment for necessary medical care required as a result of an accidental work
related on-the-job injury or illness, as described in this Plan; and salary
continuance Benefits for periods of disability resulting from an accidental
work related on-the-job injury or illness, as described in this Plan, as well
as death, dismemberment, and paralysis Benefits.@ 
The terms of the plan itself establish that it was an accident policy covering
on-the-job injuries and that its purpose was to protect Rentech. 

We
hold that Rentech was entitled to an offset.  The uncontroverted evidence shows
that Rentech=s
occupational injury benefit plan was purchased for the primary purpose of
protecting Rentech, not for providing a fringe benefit, and was therefore not a
collateral source.  The trial court erred in denying Rentech=s request for an offset.[2]








The
question then becomes the appropriate amount of offset.  Outside the presence
of the jury, Walker testified that all of the medical bills that had been
submitted for payment, totaling $551,184.34, had been paid B though some had been
satisfied by paying reduced rates.  The records from the company that actually
paid the benefits on behalf of Rentech=s
insurance company were also submitted in Rentech=s
offer of proof.  These records indicated that medical bills totaling
$487,682.68 were received and that all of them had been satisfied, though paid
at a reduced rate.  Regardless of which amount is accurate, either amount is
greater than the amount of past medical expenses proven by the plaintiffs: 
only $381,788.[3]  Therefore,
upon the remittitur suggested above, Rentech will be entitled to an offset for
the entire amount of the award for past medical expenses, and the judgment
shall be modified accordingly B
reducing the award to Preston=s
parents to $70,000.  See Doss, 737 S.W.2d at 611-12 (reforming trial
court=s judgment to
reflect offset). 

Rentech
next argues that the evidence is legally and factually insufficient to support
the amount of damages awarded to Preston for future medical expenses.  The jury
found that Preston would incur $1,000,000 in future medical expenses.  Preston=s doctor determined that
Preston would undergo ten to fifteen more surgeries in the future at a cost of
$5,000 to $20,000 per surgery.  A life care planner calculated Preston=s future medical and
related expenses to be $2,925,299.89, which included $1,982,110 for home
maintenance, a bookkeeper, a housekeeper, and a home health aide. During
cross-examination of the plaintiffs=
life care planner and during the direct examination of another life care
planner who testified for the defense, the calculations and the necessity of
the expenses listed in the plaintiffs=
life care plan were challenged.  The admissibility of the evidence regarding
the plaintiffs= life
care plan is not at issue on appeal. 








The
award of future medical expenses lies within the discretion of the factfinder. 
Ibrahim v. Young, 253 S.W.3d 790, 808 (Tex. App.CEastland 2008, pet.
denied); City of San Antonio v. Vela, 762 S.W.2d 314, 321 (Tex. App.CSan Antonio 1988, writ
denied).  To sustain an award of future medical expenses, the claimant must
present evidence to show that there is a reasonable probability that medical
expenses will be incurred in the future and the reasonable costs of such care. 
Ibrahim, 253 S.W.3d at 808; Columbia Med. Ctr. of Las Colinas v. Bush,
122 S.W.3d 835, 862-63 (Tex. App.CFort
Worth 2003, pet. denied).  Because no precise evidence is required, the
factfinder may award damages for future medical expenses based upon the nature
of the injury, the medical care rendered prior to trial, and the condition of
the injured party at the time of trial.  Ibrahim, 253 S.W.3d at 809. 
Based upon the nature of Preston=s
injuries, his condition at trial, the life care plan, and the probability of an
additional ten to fifteen future surgeries, we hold that it was within the jury=s discretion to find future
medical expenses of $1,000,000.  The evidence is both legally and factually
sufficient to support that finding. 

Accordingly,
Issue II is sustained in part and overruled in part.  It is sustained with
respect to the challenges to the award of past medical expenses and overruled
as to the challenges to the award of future medical expenses. 

                                                         Excessiveness
of Damages

In
Issue III, Rentech contends that the damages B
whether considered individually or as a whole B
are excessive and require either a substantial remittitur or a new trial. 
Rentech=s argument is
based upon the sufficiency of the evidence in this case, upon a comparison of
damage awards from similar cases, and alternatively, upon a revised remittitur
standard that Rentech encourages this court to adopt.[4] 


To
determine whether the damages awarded to Preston are excessive, we must
consider the factual sufficiency of the evidence.  In reviewing a challenge
that an award for a category is excessive, we must consider all the evidence
that bears on that category of damages, even if the evidence also relates to
another category of damages.  If more than one award in overlapping categories
is challenged as excessive, we must consider all the evidence that relates to
the total amount awarded in all overlapping categories to determine if the
total amount awarded is excessive.  Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 773-74 (Tex. 2003).  We note that non‑economic damages
cannot be determined with mathematical precision but only by the exercise of
sound judgment.  Bentley v. Bunton, 94 S.W.3d 561, 605 (Tex. 2002). 
Accordingly, a jury is given some latitude in awarding such damages, but its
discretion is limited; the evidence must justify the amount awarded.  Id.;
Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614
(Tex. 1996).  A jury may not simply pick a number and put it in the blank, but
must find an amount that Awould
fairly and reasonably compensate@
for the loss.  Saenz, 925 S.W.2d at 614.  








In
this case, the court requested the jury to determine what sum of money would
fairly and reasonably compensate Preston for his injuries and properly
instructed the jury not to compensate Preston twice for the same loss.  The
jury made the following findings with respect to Preston=s damages:  past disfigurement of $1,500,000;
future disfigurement of $50,000; past physical pain and suffering of
$2,500,000; future physical pain and suffering of $1,000,000; past mental
anguish of $1,750,000; future mental anguish of $300,000; past medical expenses
of $1,000,000; past physical impairment of $2,000,000; future physical
impairment of $1,000,000; and loss of earning capacity of $750,000.  The jury
also found that Preston=s
parents were entitled to $70,000 for past nursing care and $550,000 for past
medical expenses.

The
term Adisfigurement@ includes an impairment or
injury to the beauty, symmetry, or appearance of a person or thing, rendering
it unsightly, misshapen, imperfect, or deformed in some manner.  Goldman v.
Torres, 341 S.W.2d 154, 160 (Tex. 1960); Pendergraft v. Carrillo,
273 S.W.3d 362, 367 (Tex. App.CEastland
2008, pet. denied).  The jury was able to determine the amount of damages for
past and future disfigurement from viewing pictures of Preston=s hands, viewing Preston=s hands at trial, and
hearing testimony from Preston=s
surgeon about what the future holds with respect to that issue.  There was also
evidence of scarring from skin grafts and tissue removal on Preston=s sides and hip area, both
thighs from the top of his knee to his hip, and upper arm.








Evidence
of Preston=s past and
future physical pain and suffering was abundant.  Preston=s experienced orthopedic
hand surgeon described Preston=s
injury as Athe worst
bilateral hand injury that I have seen or taken care of@; Preston Aessentially
had both of his hands ripped off.@ 
At the time of the injury and at the hospital, Preston screamed in agony.  Not
only did Preston testify about the pain he experienced, but the severity of the
pain was evident from his screams; the amount of blood; the crushing of Preston=s bones (which he could
hear and feel crunching and popping, tendons, nerves, and arteries; the
complete degloving of his hands, i.e., the separation of the skin and tissue
from the underlying bones; a thumb and pieces of some fingers being Aripped off@; the subsequent rotting of
parts of both hands; and the eventual amputation of several fingers.  According
to Preston=s
orthopedic hand surgeon, Dr. Karen Johnston-Jones, Preston was Ashaking with pain@ when he arrived at the
hospital in San Antonio and Awas
in shock from pain,@
not from the blood loss.  Dr. Johnston-Jones characterized the pain as Aexcruciating,@ a A12@
on a scale of A1 to
10.@  Pictures of
Preston=s mangled,
bloody hands were admitted into evidence.  Preston was given strong pain
killers, but still he experienced pain.  Preston later had to endure the pain
of withdrawal from the strong narcotic pain killers that doctors had given him. 
Both of Preston=s
hands had been sewn into Agroin
flaps@ for three
weeks.  Preston had undergone nineteen surgeries to attempt to save as much of
his hands as possible.

The
evidence also showed that, at the time of trial, Preston continued to
experience pain on a daily basis.  Preston had an open wound at the time of
trial that would not heal properly.  Dr. Johnston-Jones testified that Preston
will probably never be pain-free, that the crushed nerves will continue to
cause him pain, that he had already developed severe arthritis in his hands,
and that he would probably need ten to fifteen additional surgeries in the
future.

To
recover damages for mental anguish, a plaintiff must introduce Adirect evidence of the
nature, duration, and severity@
of his mental anguish B
establishing Aa
substantial disruption@
in his daily routine B
or Aevidence of >a high degree of mental
pain and distress=
that is >more than
mere worry, anxiety, vexation, embarrassment, or anger.=@ 
Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995) (quoting J.B.
Custom Design & Bldg. v. Clawson, 794 S.W.2d 38, 43 (Tex. App.CHouston [1st Dist.] 1990,
no writ)).  The record shows that Preston, his mother, his father, his
orthopedic surgeon, and professional counselor testified about Preston=s withdrawal from others,
the loss of his friends, his depression, his anguish in coping with the
injuries to his hands, his struggle to overcome an addiction to the prescribed
painkillers, and his thoughts of suicide.  Preston=s surgeon testified that his depression was Avery clear@ by one month after the
accident.

Damages
for Aphysical
impairment@ encompass
the loss of enjoyment of life, the effect of which must be substantial and extend
beyond any pain, suffering, mental anguish, lost wages, or diminished earning
capacity.  Golden Eagle Archery, 116 S.W.3d at 772.  The evidence
indicates that Preston=s
injuries have caused physical impairment.  Preston is unable to do many
everyday tasks like open a water bottle or button his shirt.  His ability to
write is very limited because of the pain writing causes.  He can use a
computer by pecking with a middle finger and a thumb.  Although Preston showed
incredible determination and character by working hard to make the varsity
football team his senior year in high school, he still could not be a receiver
or play baseball. He cannot throw or catch a baseball.  His ability to do many
things he once enjoyed is limited.








Testimony
regarding the damages for Preston=s
loss of earning capacity and his medical expenses was provided by expert
witnesses.  With the exception of the past medical expenses addressed in detail
in Issue II, the amount of damages for medical expenses and lost earning
capacity was supported by the experts=
testimony.  Furthermore, the modest amount awarded for nursing care was
supported by the testimony of Preston=s
mother about the extensive amount of care she gave Preston.

After
reviewing the evidence in this case, we hold that the evidence is sufficient to
support the jury=s
findings, whether considered individually or as a whole ($12,470,000 before any
credit or offset).  Thus, the damages are not excessive, and we cannot disturb
the jury=s findings
based upon the record before us.

Rentech
also requests that we compare the damages awarded in this case to verdicts in
other cases and that we revise the remittitur standard to be more objective. 
However, the facts in this case are unique.  Rentech does not cite any case
with facts involving degloving hand injuries to both hands.  We have applied
the standard of review set out by the Texas Supreme Court.  As an intermediate
court, we are bound by supreme court precedent.  Therefore, we must leave any
revision of the standard to the supreme court or the legislature.  Issue III is
overruled.  

                                                               This
Court=s Ruling

The
judgment of the trial court is affirmed in part and, conditioned on remittitur,
modified in part.  With respect to past medical expenses, we suggest a
remittitur in the amount of $168,212.  Upon the suggested remittitur, Rentech
will be entitled to an offset for the entire amount of the award for past
medical expenses, and the judgment shall be modified to delete any award for
past medical expenses, thereby reducing the award to Preston=s parents to $70,000.  If
the remittitur is not filed within twenty days from the date of this opinion,
the trial court=s
judgment will be reversed, and the cause will be remanded to the trial court
for a new trial.  Rule 46.3; Guevara, 247 S.W.3d at 670.  

 

JIM R. WRIGHT

CHIEF JUSTICE

August 13, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Although the plaintiffs also sued other entities, these
entities settled with the plaintiffs and were dropped as defendants from the
petition that served as the live pleading at the time of trial.





[2]We note that the plaintiffs assert that offset was not
proper because the insurance company had intervened and asserted a claim for
subrogation with respect to the settlement proceeds received from the settling
defendants.  However, the plea in intervention and all claims between the
plaintiffs and the insurance company were severed from this cause.  Any issue
relating to a possible subrogation is not before this court and does not affect
Rentech=s right of offset. 





[3]We note that both amounts are not greater than the
$550,000 actually awarded by the jury.  Accordingly, if the plaintiffs do not
file an appropriate remittitur, the amount of offset to which Rentech is
entitled must be determined on remand.  





[4]Rentech asserts that the amount of damages awarded by
the jury exceeded the amount sought by the plaintiffs in their live petition. 
However, the record shows that the trial court granted the plaintiffs= motion to amend their petition to conform to the jury=s award and that the petition was so amended.